IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Carl Mark Daniels as PR for the Estate of Delton Daniels,<br><br>        Plaintiff,<br><br>vs.<br><br>FCA US, LLC f/k/a Chrysler Group, LLC, South Carolina Department of Transportation, and Nolan's Service Station.<br><br>        Defendants. | Civil Action No.: 4:17-02300-AMQ<br><br>**ORDER AND OPINION** |

  This matter is before the Court on a motion to remand filed by Plaintiff Carl Mark Daniels as Personal Representative for the Estate of Delton Daniels ("Plaintiff") (ECF No. 10) and the motion to dismiss, or alternatively, motion to sever (ECF No. 3) filed by Defendant FCA US LLC ("FCA"). These motions have been fully briefed and the Court held a hearing on the motions on June 5, 2018. For the reasons set forth below, the Court denies the motion to remand and denies the motion to dismiss, or alternatively, motion to sever and transfer.

## **BACKGROUND AND PROCEDURAL HISTORY**

**A. The Bankruptcy Case**

  On April 30, 2009, Chrysler LLC[1] ("Chrysler") filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court").

---

[1] There appear to be multiple Chrysler entities involved related litigation including: Old Carco LLC, New Old Carco LLC, Chrysler Corporation, DaimlerChrysler Corporation, Old Chrysler, New Chrysler and Chrysler Group. As used in this decision, Chrysler refers to the named

1

(ECF No. 9, at 2.) On that same day, Chrysler and FCA entered into a Master Transaction Agreement ("MTA"), in which FCA agreed to purchase substantially all of Chrysler's assets and assumed certain liabilities of Chrysler. (ECF No. 1-3, at 2, 52.) On June 1, 2009, the Bankruptcy Court issued an Order authorizing the sale of Chrysler's assets to FCA ("Sale Order"). In the Sale Order, the Bankruptcy Court addressed the liabilities of Chrysler that FCA, as the newly-formed purchaser, would assume. (ECF No. 1-2.) Those assumed liabilities are at issue in FCA's motion to dismiss.

Section 2.08(h) of the MTA originally provided that FCA shall assume liability for "all Product Liability Claims arising from the sale *after the Closing* of Products or Inventory manufactured by Sellers or their Subsidiaries in whole or in part prior to the Closing." (ECF No. 1-2 at 8-9.) (emphasis added) The Sale Order states that except for the Assumed Liabilities in the MTA, FCA is not liable for any claim that *"(a) arose prior to the Closing Date*, (b) relates to the production of vehicles prior to the Closing Date or (c) otherwise is assertable against [Chrysler] or is related to the Purchased Assets prior to the Closing Date." (ECF No. 1-2, at 53.) (emphasis added)

However, on November 19, 2009, section 2.08(h) of the MTA was amended to expand the liabilities FCA agreed to assume to also include:

> all Product Liability Claims arising from the sale *on or prior to the Closing* of motor vehicles or component parts, in each case manufactured by Sellers or their Subsidiaries and distributed and sold as a Chrysler, Jeep, or Dodge brand vehicle or MOPAR brand part, solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and (D) do not include any claim for exemplary or punitive damages.

---

collective entity that sold substantially all of its assets to FCA pursuant to the agreements and the Sale Order described in the succeeding text.

*Id.* (emphasis added) The Bankruptcy Court approved this amendment to the Sale Order on November 19, 2009. (ECF No. 1-2).

**B. Facts and Procedural History of the Instant Action**

Plaintiff filed a complaint in the Court of Common Pleas of Marlboro County on July 14, 2017, for claims arising out of a car accident that occurred on July 20, 2015 in Marlboro County, South Carolina. (ECF No. 1-1.) The complaint alleges that decedent Delton Daniels was a passenger in a 2009 Chrysler Dodge Durango when the driver lost control of the vehicle due to water in the roadway. (ECF No. 1-1, at ¶ 7). The vehicle overturned, and Mr. Daniels' front passenger side curtain airbag failed to deploy, causing his partial ejection in the rollover and, ultimately, his fatal injuries. *Id.* at ¶¶ 7-8, 12-13. Plaintiff is Mr. Daniels' father and brought this action as Personal Representative of his Estate. Plaintiff asserts product liability claims for negligence, breach of statutory express and implied warranties and strict liability claims against FCA as the purchaser of Chrysler's assets and certain liabilities (ECF Nos. 1-1, 1-2 at 50.) Plaintiff also asserts negligence claims against defendants South Carolina Department of Transportation ("SCDOT") and Nolan's Service Station. (ECF 1-1.)

FCA filed a notice of removal on August 29, 2017, asserting federal question jurisdiction under 28 U.S.C. § 1452 and 28 U.S.C. § 1334(b) on the grounds that Plaintiff's claims "arise in" and are "related to" the bankruptcy proceeding or alternatively, under 28 U.S.C. § 1331 because Plaintiff's state law claims are completely preempted by federal bankruptcy law (ECF No. 1, at 5-6.) On September 5, 2018, FCA filed a motion to dismiss Plaintiff's claims for negligence, breach of warranty and punitive damages, or, alternatively a motion to sever and transfer. (ECF No. 3.) The motion does not address Plaintiff's strict liability claim. (ECF No. 9 at 2.) On September 18, 2017, Plaintiff filed a motion to remand, asserting that the Court does not have jurisdiction under

28 U.S.C § 1334(b) because his claims did not arise in, arise under, or relate to the bankruptcy proceeding. (ECF No. 10.) The motion to remand further asserts that there is no jurisdiction 28 U.S.C. § 1331 because Plaintiff's state law claims are not completely preempted federal law. *Id.* at 10. On February 2, 2018, SCDOT also filed a motion to remand (ECF No. 27) on Eleventh Amendment grounds, asserting that it could not be hauled into federal court without its consent. *Id.* On October 2, 2017, FCA filed a response in opposition to Plaintiff's motion to remand. (ECF No. 18.) On June 5, 2018, a hearing was held on the motion to dismiss filed by FCA (ECF No. 3), the motion to remand filed by SCDOT (ECF No. 27), and the motion to remand filed by Plaintiff (ECF No. 34). At the hearing, this Court took the matters under advisement and requested additional briefing as to whether consent of all defendants is required if a case is removed on the basis of concurrent federal question jurisdiction. On June 18, 2018, SCDOT consented to removal (ECF No. 39), thereby rendering SCDOT's motion to remand (ECF No. 27) moot.

## STANDARDS OF REVIEW

**A. Removal**

The right to remove a case from state court to federal court derives from 28 U.S.C. § 1441, which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." 28 U.S.C. § 1441(a). Title 28 U.S.C. 1334(b), in turn, provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." If jurisdiction is proper under section 1334, "[a] party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is

4

pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a).

General principles of removal and remand apply to bankruptcy, as well as non-bankruptcy, actions. *See Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 128 (1995). "Federal courts must construe removal statutes strictly, guard against expansion of removal jurisdiction by judicial interpretation, and resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Branch v. Coca-Cola Bottling Co. Consol.*, 83 F. Supp. 2d 631, 632 (D.S.C. 2000) (internal quotation marks omitted). "To insure that federal courts do not overstep constitutional bounds and delve into matters that are purely state law, federal precedent scrupulously confines removal jurisdiction. . . . Hence, removal is warranted only when absolutely essential under federal law." *Foster v. Roda Converting SA*, 2007 U.S. Dist. LEXIS 7899, *2 (D.S.C. 2007) (unpublished) (internal quotation marks omitted). "If federal jurisdiction is doubtful, a remand is necessary." *Mulcahey v. Columbia Organic Chems. Co*., 29 F.3d 148, 151 (4th Cir. 1994). "The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Id.* at 151.

**B. Rule 12(b)(6) Motion to Dismiss**

A plaintiff's complaint should set forth "a short and plain statement. . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556)). In considering a motion to dismiss

under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). However, a court "'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)) (modification in original). A court should grant a Rule 12(b)(6) motion if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

**C. Severance and Transfer**

Rule 21 of the Federal Rules of Civil Procedure provides that the "court may also sever any claim against a party." Fed. R. Civ. P. 21. Pursuant to 28 U.S.C. § 1612, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Transfer of actions "related to" bankruptcy proceedings is governed by the "interests of justice or the convenience of the parties" standard § 1412. *Dunlap v. Friedman's, Inc.*, 331 B.R. 674, 680 (S.D. W. Va. 2005) (holding that § 1412 applies to cases "related to" bankruptcy proceedings). "The district court has "broad discretion" whether to grant or deny a motion to transfer. *Landers v. Dawson Constr. Plant, Ltd.*, 1999 WL 991419, at *2 (4th Cir. Nov. 2, 1999) (unpublished). "The party moving for change of venue bears the burden of proof and that burden must be carried by a preponderance of the

evidence." *Gulf States Exploration Co. v. Manville Forest Prods. Corp.*, 896 F.2d 1384, 1390 (2d Cir. 1990).

## **DISCUSSION**

**A. Motion to Remand**

The Court must address the jurisdictional issues raised by the motion to remand before consideration of the motion to dismiss or, alternatively, motion to sever and transfer. Plaintiff asks the Court to remand this action back to the Court of Common Pleas for Marlboro County. (ECF No. 10, at 1.) Plaintiff argues that there is no jurisdiction under 28 U.S.C. 1334(b) because the case neither arises in nor relates to the bankruptcy case. *Id.* at 3. Plaintiff also claims that the Court lacks jurisdiction under 28 U.S.C. § 1331 because a defense of federal preemption does not confer subject matter jurisdiction. *Id.* at 6. The Court addresses these matters in turn.

### **1. Section 1334(b)**

Plaintiff argues that the Court lacks jurisdiction because Plaintiff's right to relief does not depend on bankruptcy law and does not fall within the requisite "arising in" or "related to" jurisdiction. (ECF No. 10, at 3-6.) Plaintiff asserts that his product liability claims would have existed whether or not Chrysler filed for bankruptcy. *Id.* at 3. Plaintiff argues that his claims do not involve or depend on resolution of federal bankruptcy law. *Id* at 4. Furthermore, Plaintiff argues that the outcome of the present case will have no effect on the bankruptcy estate. *Id.* at 5. Plaintiff also argues that this action does not affect an interpretation of the confirmed plan because the Bankruptcy Court has already determined that FCA assumed liability for Plaintiff's product liability claims arising out of an accident. *Id.*

Pursuant to 28 U.S.C. § 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under

7

title 11." "'Arising under' jurisdiction extends to only those cases in which a well-pleaded complaint establishes either that federal bankruptcy law creates the cause of action or that the plaintiffs right to relief necessarily depends on resolution of a substantial question of federal bankruptcy law." *BGC Partners Inc. v. Avison Young (Can.) Inc.*, 2015 U.S. Dist. LEXIS 158334, *15 (D.S.C. Nov. 24, 2015); *see also In re A. H. Robins Co.*, 86 F.3d 364, 372 (4th Cir. 1996). "[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Therefore, an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and it in any way impacts upon the handling and administration of the bankruptcy estate." *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 836 (4th Cir. 2007). In the post-confirmation context, "related to" requires a close nexus to the bankruptcy proceeding. *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 836-37 (4th Cir. 2007) (noting that the "close nexus" requirement in the post-confirmation context is a logical corollary of "related to" jurisdiction); *see also In re Resorts Int'l, Inc.*, 372 F.3d at 164–69 (3rd. 2006).

In practical application, "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Valley Historic Ltd. P'ship* at 836-37; see also, *In re Poplar Run Five Ltd. Ptnr.*, 192 B.R. 848, 859 (Bankr. E.D. Va. 1995). Other courts have found that a claim is related to a bankruptcy proceeding in the post-confirmation context where interpretation of a sale order is at issue. *Powell v. FCA US LLC*, 2015 WL 5014097, at *10 (M.D. Ala. Aug. 21, 2015) (unpublished) ("Before any court considers the merits of the case, it will first have to interpret the scope of the Sale Order as applied to the Plaintiff's claims. Therefore, the court finds that the case

8

"arises in" a bankruptcy case."); *see also*, *Educ. Credit Mgmt. Corp. v. Pulley*, 532 B.R. 12, 18 (E.D. Va. 2015) ("A claim 'arises in Title 11' when it would have no practical existence but for the bankruptcy.") (internal citation omitted); (E.D. Ky. July 31, 2012) (concluding that whether the plaintiff's claim falls into the narrow categories of product liability claims for which FCA assumed liability requires interpretation of the Sale Order).

FCA argues that jurisdiction is proper in this Court because Plaintiff's claims both arise in and are related to the bankruptcy proceeding. (ECF No. 18, at 3.) FCA argues that it is a defendant only because of the Sale Order. *Id*. at 5. Further, FCA argues that its assertion in its motion to dismiss (ECF No. 3) that [the plaintiff's claim] is barred by the bankruptcy court's orders necessarily requires interpretation of the Bankruptcy Sale Order. (ECF No. 18, at 3.) FCA cites *Dearden v. FCA US LLC* from the United States District Court from the Eastern District of Pennsylvania as persuasive authority. 2017 WL 1190980 at *5 (E.D. Pa. Mar. 31, 2017) (unpublished). In *Dearden* as here, the district court considered a motion to remand in a case against FCA for a vehicle manufactured and designed by Chrysler. *Id.* Denying the motion to remand, the *Dearden* court held that the matter both arose in and related to the Chrysler bankruptcy proceeding. *Id.* at *6. The court's reasoning was two-fold: "(1) FCA is a defendant only because of the Sale Order… and (2) FCA's assertion that [the plaintiff's claim] is barred by the bankruptcy court's orders necessarily requires interpretation of the Sale Order." *Id.* (omitting internal citations and parentheticals).[2]

---

[2] The *Dearden* court sits in the Third Circuit, which applies the same "close nexus" test adopted by the Fourth Circuit in *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 836-37 (4th Cir. 2007) ("we find the Third Circuit's "close nexus" requirement to be a logical corollary of "related to" jurisdiction…. [and] we agree with the Third Circuit that under this inquiry that "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus").

FCA asserts that numerous opinions from other courts concerning FCA and the obligations it assumed establishes a close relationship to the bankruptcy proceeding. (ECF No. 18, at 4.) *See also*, *Martin v. Chrysler Grp., LLC*, 2013 U.S. Dist. LEXIS 134763, at *17 (W.D. Va. Sep. 20, 2013) (unpublished) ("Plaintiffs' claims against Chrysler Group would not exist "but for" the Sale Order entered in *In re Old Carco LLC* and thus, the instant matter "arises in" the bankruptcy case and jurisdiction is proper under 28 U.S.C. § 1334(b)."); *Ricks v. New Chrysler*, 2011 U.S. Dist. LEXIS 80653, at *4 (S.D.N.Y. July 22, 2011) (unpublished) ("Plaintiffs' claims […] are covered by the plain terms of paragraph 19 of the bankruptcy court's Sale Order and thus arise in the Title 11 case of *In re Old Carco LLC*."); *Tulacro v. Chrysler Grp., LLC*, 2011 U.S. Dist. LEXIS 157718, at *8 (C.D. Cal. Feb. 2, 2011) (unpublished) ("The bankruptcy court's interpretation of its prior sale order in this case is inextricably linked to its administration of the *In re Carco* bankruptcy case. [The plaintiff's] claims against Chrysler Group clearly do not exist independently from the bankruptcy case."). (ECF No. 18.)

The Court finds that there is a close nexus between the present action and the bankruptcy case. Plaintiff is correct that his claims would have existed whether or not Chrysler filed for bankruptcy protection. However, he would not have been able to assert these elements against FCA except for the bankruptcy. Moreover, at least portions of this case, including the second part of this Order, involve interpretations of the Bankruptcy Court's Sales Orders. Based on these factors, other courts that have addressed the question have held that federal jurisdiction in facts that those presented in this case is proper. The Court agrees and, accordingly, finds that there is proper jurisdiction under § 1334(b) and that removal is proper under § 1452. Therefore, Plaintiff's Motion to Remand (ECF No. 10) is denied.

## 2. 28 U.S.C. § 1331

FCA asserts that federal jurisdiction is also proper under 28 U.S.C. § 1331. FCA contends Plaintiff's claims are completely preempted because they conflict with federal bankruptcy law and the orders issued by the Bankruptcy Court. (ECF No. 1, at 6.) The Court declines to address the topic of preemption because the Court has already found that removal is proper under § 1334(b).

**B. Motion to Dismiss, or Alternatively, Motion to Sever and Transfer**

In light of the Court's determination that jurisdiction is proper under 28 U.S.C. 1334(b), the Court now turns to FCA's motion to dismiss, or alternatively, motion to sever and transfer. (ECF No. 3.) FCA argues Plaintiff's causes of action for negligence and breach of warranty should be dismissed because Plaintiff's claims are barred by the Bankruptcy Sale Order and the terms of the MTA. (ECF No. 3.)

As set forth above, section 2.08(h)[3] of the MTA describes claims FCA agreed to assume. Section 208(h) was amended in November 19, 2009 to describe additional "Assumed Liabilities" beyond those assumed in the original version of the MTA. This amendment was quoted above but is repeated because of its importance to this issue. In section 2.08(h) as amended, FCA agreed to assume:

> all Product Liability Claims arising from the sale *on or prior to the Closing* of motor vehicles or component parts, in each case manufactured by Sellers or their Subsidiaries and distributed and sold as a Chrysler, Jeep, or Dodge brand vehicle or MOPAR brand part, solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and (D) do not include any claim for exemplary or punitive damages.

---

[3] Section 2.08 generally refers to Assumed Liabilities. (ECF No. 1-2, at 69.)

(ECF No. 1-2, at 69.) (emphasis added) Prior to this amendment, FCA had not agreed to assume claims that, like those at issue in this case, arose from sales on or prior to the Closing. Plaintiff alleges the claims he asserts in this case fall within those described in section 2.08(h) as amended.

In its motion to dismiss, FCA relies on section 2.09(j) of the MTA. This section describes assets which are not assumed by FCA. The introduction to section 2.09 provides:

> Purchaser shall not assume and shall be deemed not to have assumed, and Sellers shall be solely and exclusively liable with respect to, any Liabilities of Sellers other than the Assumed Liabilities (collectively, the "Excluded Liabilities"). For the avoidance of doubt, the Excluded Liabilities include the following…

(ECF No. 1-2, at 70.) Section 2.09(j) is one of the categories of Excluded Liabilities. It covers "all Liabilities in strict liability, negligence, gross negligence or recklessness for acts or omissions arising prior to or ongoing at the Closing." *Id.* at 70. FCA argues that the phrase "acts and omissions" in section 2.09(j) refers to conduct of Chrysler. (ECF No. 3-1, at 6.) FCA claims that since section 2.09(j) was never amended, "conduct-related" causes of action were not and could not have been included in the amendment of section 2.08(h) described above *Id.* at 11. FCA argues "conduct-related" causes of action were never assumed and thus cannot be maintained against FCA. *Id.* FCA does not deny that the strict liability claim can be maintained. *Id.* at 2. FCA distinguishes strict liability on the one hand from negligence and breach of warranty on the other hand on the basis that strict liability is not a "conduct-related" claim whereas negligence and breach of warranty are.

The Court disagrees. FCA asserts a reading of the MTA that is inconsistent with its clear text. The amendment to section 2.08(h) of the MTA expanded the definition of "Assumed Liabilities." (ECF No. 1-3, at 7.) Referring back to that definition as amended, Plaintiff's claims involve a vehicle made on or prior to the Closing, are not barred by the applicable statute of

limitations and do not involve allegations of exposure to asbestos-containing material or other Hazardous Material. Further, Plaintiff does not seek punitive damages against FCA.[4] (ECF No. 1-1, at 7.) Thus, the only remaining issue to consider in determining if Plaintiff's claims were assumed is whether such claims are "Product Liability Claims" as defined by the MTA.

The MTA defines "Product Liability Claims" as follows:

"Product Liability Claim" means any Action or action taken or otherwise sponsored by a customer arising out of, or otherwise relating to in any way in respect of claims for personal injury, wrongful death or property damage resulting from exposure to, or any other warranty claims, refunds, rebates, property damage, product recalls, defective material claims, merchandise returns and/or any similar claims, or any other claim or cause of action, whether such claim is known or unknown or asserted or unasserted with respect to, Products or items purchased, sold, consigned, marketed, stored, delivered distributed or transported by the Company Business, any Selling Group Member or any of its Subsidiaries, whether such claims or causes of action are known or unknown or asserted or unasserted."

(ECF No. 2-2, at 154.) This definition has never been amended and remains in effect. It does not exclude negligence claims, breach of warranty claims or "conduct-related" claims. Plainly, this definition covers Plaintiff's negligence and breach of warranty claims as well as his strict liability claim.

Furthermore, section 209(j) contains no language inconsistent with this analysis. The "acts and omissions" argument of FCA ignores the fact that the introduction to section 2.09 contains a critical caveat to section 2.09(j). It plainly states that the excluded claims in section 2.09 and all its sub-sections do not include "Assumed Liabilities." (ECF No. 1-2, at 69.) As set forth above, "Assumed Liabilities" under the MTA, as amended, include all "Product Liability Claims" that

---

[4] The last paragraph of Plaintiff's complaint states: "Plaintiffs pray for an award of actual and punitive damages, for the cost of bringing this action and for such other and further relief as this Court may deem just and proper. Plaintiff is aware that punitive damages may not be awarded against South Carolina Department of Transportation and FCA in this action and does not seek the same as to these Defendants." (ECF No. 1-1, at 7.)

13

meet the requirements of section 2.08(h). *Id.* All plaintiff's claims meet those requirements and are "Product Liability Claims."

Had the parties to the MTA or the Bankruptcy Court intended to exclude negligence and breach of warranty claims from the liabilities assumed by FCA, they could easily have done so. It would have been simple to add a sentence to either section 2.08(h) or the definition of Product Liability Claims to clarify that negligence and breach of warranty claims were not assumed. They did not making it clear from the text that such claims were not excluded and were assumed by FCA.

Besides the plain text of the MTA, a recent opinion of the United States Bankruptcy Court for the Southern District of New York, which is the Court that issued the orders approving the MTA and its amendments, supports the Court's decision. (ECF No. 41.) At the June 5, 2018 hearing on this matter, FCA and Plaintiff indicated that the issue before this Court by FCA's motion to dismiss was also before the Bankruptcy Court and that an opinion was likely imminent. FCA and Plaintiff both indicated that the opinion would be persuasive on the issue before this Court. Since the hearing, the Bankruptcy Court issued *In re Old Carco LLC,* No. 09-50002 (Bankr. S.D.N.Y. June 26, 2018). The Court finds Bankruptcy Court's opinion is persuasive. The Court will not review the reasoning or holding in the Bankruptcy Court's Opinion other than noting it is consistent with this Court's decision.

For all the foregoing reason, FCA's motion to dismiss is denied. For those same reasons, including the *In re Old Carco LLC* opinion, the Court also denies FCA's alternative motion to sever and transfer.

## **CONCLUSION**

For the reasons set forth above, it is hereby ORDERED that Plaintiff's motion to remand (ECF No. 10) is DENIED and FCA's motion to dismiss or, alternatively, motion to sever and transfer (ECF No. 3) is DENIED.

**IT IS SO ORDERED**

                                                              s/ A. Marvin Quattlebaum, Jr.
                                                              A. MARVIN QUATTLEBAUM, JR.
                                                              United States District Judge

Greenville, South Carolina
July 26, 2018